**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   Case No.:
ANASTASIA SIOKAS,

                               Plaintiff,              COMPLAINT

      -against-

WACOAL AMERICA, INC.,                      PLAINTIFF DEMANDS
                                                                        A TRIAL BY JURY

                               Defendant.
-------------------------------------------------------------------X

Plaintiff Anastasia Siokas, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

### Nature of the Case

1. Plaintiff complains pursuant to the Family Medical Leave Act ("FMLA"); New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"); the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et seq*. ("NYCHRL"); and seeks damages to redress the injuries she suffered as a result of being **discriminated and retaliated** against on the basis of her **actual and/or perceived disabilities (Lymphodema, Arthritis, and fractured spine)**.

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 insofar as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

2. The Plaintiff, Anastasia Siokas is a citizen of the State of New York.

1

3. The Defendant, WACOAL AMERICA, INC., is incorporated under the laws of the State of Delaware and has its principal place of business at One Wacoal Plaza, Lyndhurst, New Jersey 07071.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred therein.

5. Alternatively, jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

## Parties

6. At all times material, Plaintiff was an employee of Defendants.

7. At all times material, Defendant WACOAL AMERICA, INC. ("WACOAL") was business corporation operating in the State of New York.

8. At all times material, Plaintiff was an employee of Defendant WACOAL.

9. Defendant WACOAL had fifteen (15) or more employees for each working day during the relevant period.

10. At all times material, Defendant WACOAL was and is a qualified employer under the FMLA in that it employed at least 50 or more employees.

11. At all times material, Plaintiff was a qualified employee under the FMLA in that she worked for Defendant WACOAL for at least 12 months prior to her need for FMLA leave.

## Material Facts

1. Plaintiff is a resident of Suffolk County, New York.

2. In or around August of 1992, Plaintiff began working for Defendant as a Designer.

3. As a Designer, Plaintiff's duties included but were not limited to design, technical fitting, and corresponding with the manufacturers of perfecting fit for intimate apparel produced in Israel, Asia, and other WACOAL factories.

4. Plaintiff worked for Defendant at its location at 136 Madison Ave, Fl 14, New York, NY 10016.

5. Plaintiff was and has been qualified for her position.

6. From on or about 2010, Plaintiff was diagnosed with Lymphedema and arthritis on the knees, which caused her to suffer pain in both of her legs.

7. On or about July of 2019, Plaintiff was involved in a major car accident where she suffered serious injuries, including but not limited to a fractured spine.

8. Due to the aforementioned sustained injuries, Plaintiff suffered and suffers from long-term physical impairment, which included but was not limited to intermittent unbearable and debilitating bodily back pain for which she had to wear a back brace, in addition to exacerbation of her symptoms of Lymphedema and arthritis.

9. In approximately December of 2019, Plaintiff asked Miryha Fontegrossi ("Miryha"), Vice President of Design at WACOAL, for an L-shaped desk. This desk was 29 ½" high as opposed to a high-top drafting table in order to give Plaintiff's back time to heal after her back injury and to relieve the pain in her left and right legs.

10. Plaintiff offered to personally purchase said desk and other items needed to allow her to work comfortably and pain-free. Plaintiff discussed this with Carol Kamura ("Carol"), Office Manager, who oversaw office purchasing.

11. In response, Miryha refused Plaintiff's request, stating that all designers must have matching furniture and thus Plaintiff was denied this accommodation.

12. Plaintiff then complained to Carol, who then spoke with Bob Vitale ("Bob"), President of WACOAL, regarding the accommodation. Bob instructed Miryha to provide Plaintiff with an L-shaped desk, 29 ½" high, in an office with carpeted floor that would prevent slipping. Additionally, this office was located closer to the model's room, which was the central location for team members that Plaintiff primarily worked with and was more wheelchair accessible in the event of any future need.

13. In or around March of 2020, Plaintiff worked remotely for approximately three (3) months due to the COVID Pandemic and fulfilled her duties without issue.

14. In or around the December of 2020, Plaintiff was required to undergo knee replacement surgeries due to recurring pain from her aforementioned injuries. Plaintiff scheduled her first surgery in her right leg for approximately the beginning of December of 2020, and scheduled the same surgery for her left leg in May of 2021. Plaintiff informed Miryha and Mary Beth McCreadie, Director of Human Resources ("Mary Beth"), of such.

15. On March 5, 2020, Bob stepped down as President of WACOAL.

16. After Bob's exit from WACOAL, Plaintiff was informed by Miryha that she would need to move from her office with accommodations in the next few months, mere weeks prior to her aforementioned right knee surgery in December of 2020.

17. Prior to being displaced from her office, Plaintiff spoke with Mary Beth and Vivienne Lee ("Vivienne"), Design Director, to express her concerns about moving back to an office that was dangerous for someone in her condition.

18. Vivienne responded that after speaking with Miryha and Mary Beth, she had no say in the matter and Plaintiff would need to move.

19. Plaintiff ordered a new rug for inside her new office to prevent falling. However, Miryha denied this accommodation and prohibited Plaintiff from placing the rug inside the new office and stated that it did not fit with the existing office décor.

20. From on or about mid-February of 2021 until mid-May of 2021, Plaintiff worked from the office despite prolonged back and leg pain.

21. On or about mid-April of 2021, in response to a request for accommodation Vivienne communicated to Plaintiff that working from home was absolutely not an option no matter the circumstances.

22. Approximately two (2) days before Plaintiff's May 11, 2021, surgery appointment, Vivienne told Plaintiff to take a full twelve (12) week leave, and then stated, "We cannot tolerate any more back and forth with these surgeries and appointments with doctors." Plaintiff had no other choice but to seek protection under the Family Medical Leave Act ("FMLA").

23. On or about May 11, 2021, Plaintiff underwent her second knee surgery. Following this surgery, Plaintiff went on leave.

24. Upon information and belief, Plaintiff worked more than 1,250 hours in the year preceding her medical leave.

25. On or about July of 2021, Plaintiff reached out to Miryha, Vivienne, and Mary Beth to ask for an extension of her medical leave as her doctors were not yet permitting her physical return to work and she had been previously denied other accommodations.

26. On or about August 10, 2021, Plaintiff provided WACOAL with a medical form from her doctor to confirm her return to work on August 16, 2021.

27. On or about August 16, 2021, Plaintiff returned physically to the office. After sitting in her chair for the afternoon, Plaintiff experienced unbearable pain in her back and was forced to physically leave the office.

28. On that same date, Plaintiff contacted Miryha, Vivenne, and Mary Beth via e-mail to send medical notes and update them on her medical condition and to inform them of a potential spinal surgery.

29. Plaintiff then reluctantly inquired to Mary Beth about being placed on medical leave as she had previously been denied an accommodation to work from home.

30. On or about Mid-October of 2021, Plaintiff was called to join a virtual Design meeting. At this meeting, Miryha announced to the team that Plaintiff would be going on disability.

31. Plaintiff was then placed on medical leave until November of 2021, which Mary Beth explained would be the only solution to ensure disability leave.

32. On or about November of 2021, Miryha contacted Plaintiff. Miryha told Plaintiff to come to the office and join the team to cut Plaintiff's retirement cake and celebrate Plaintiff's retirement.

33. Plaintiff had not communicated she had any intention of retiring. Plaintiff was shocked and confused by this abrupt termination by her long-term employer in retaliation for requesting accommodations.

34. Plaintiff realized that Defendant would not attempt to accommodate Plaintiff's disabilities, perceived her disabilities as an inconvenience, and had effectively terminated her so they would not have to provide her with any further reasonable accommodations.

35. Defendant failed to engage in the interactive process and cooperative dialogue.

36. Defendant terminated Plaintiff because of her actual and/or perceived disabilities (**Lymphedema, Arthritis, and fractured spine**).

37. Defendant terminated Plaintiff in retaliation for her requests for reasonable accommodations.

38. Defendant terminated Plaintiff so they would not have to grant her any accommodations on the basis of her disabilities.

39. As a result of Defendant's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

40. As a result of the acts and conduct complained of herein, Plaintiff has suffered the loss of income, the loss of a salary, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

41. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

## AS A FIRST CAUSE OF ACTION
## UNDER THE FAMILY AND MEDICAL
## LEAVE ACT

42. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

43. § 2615 of the Act states as follows:

44. Prohibited acts

    a. Interference with rights

        i. Exercise of rights

            1. It shall be unlawful for any employer to interfere

       with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

   (2) Discrimination

2. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

45. Defendants terminated Plaintiff in retaliation for seeking protection under the FMLA.

46. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION
UNDER THE NEW YORK STATE EXECUTIVE LAW**

38. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

39. The New York State Executive Law § 296(1)(a) provides that,

      It shall be an unlawful discriminatory practice: For an employer . . . because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

40. Defendant engaged in an unlawful discriminatory practice in violation of the New York State Executive Law § 296(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her actual and/or perceived disability (**Lymphodema, Arthritis, and fractured spine**).

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW

41. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

42. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

43. Defendant engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's engagement in an activity protected under this law.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

44. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

45. The Administrative Code of the City of New York §8-107 (1) provides:

> "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived … disability… of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

46. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her actual and/or perceived disability, together with failure to engage in the cooperative dialogue, failure to provide a reasonable accommodation, and unlawful termination.

**AS A FIFTH CAUSE OF ACTION FOR RETALIATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

47. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraph of this Complaint as if more fully set forth herein at length.

48. New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter …"

49. Defendant engaged in an unlawful and retaliatory practice by retaliating, and otherwise discriminating against the Plaintiff because she opposed Defendant' unlawful employment actions and because he requested and/or needed a reasonable accommodation.

## AS A SIXTH CAUSE OF ACTION FOR FAILURE TO PROVIDE A REASONABLE ACCOMODATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

50. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

51. The Administrative Code of the City of New York §8-107(15)(a) provides:

> "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

52. Defendant engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(15)(a) by failing to provide Plaintiff with a reasonable accommodation, and by failing to engage in the cooperative dialogue.

## JURY DEMAND

53. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the Family Medical Leave Act ("FMLA"); New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"); the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et seq.* ("NYCHRL"); in that Defendant discriminated, and retaliated against Plaintiff on the basis of her disability, whether actual and/or perceived;

11

B.      Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C.      Awarding Plaintiff punitive damages;

D.      Awarding Plaintiff damages for the amount of unpaid compensation, liquidated damages and for any improper deductions or credits taken against wages as applicable;

E.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant' unlawful employment practices.

Dated: New York, New York
April 24, 2023

                          **PHILLIPS & ASSOCIATES,**
                          ATTORNEYS AT LAW, PLLC

By: *[signature: Shawn Clark]*

Shawn Clark. Esq.
Melissa Vo, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
slcark@tpglaws.com
mvo@tpglaws.com